## HUNT and NELSON *v.* THE HOBOKEN LAND IMPROVEMENT COMPANY.

In an action, by the owners of a steamboat, against the owners of another boat, for negligence producing a collision; the plaintiffs cannot recover as damages the probable loss of profits which they might have realized from a return trip from a place, whither their boat was bound when injured by the collision.

It is error to charge a jury, that the statute of this state, requiring steamboats when meeting each other to turn to the right (or to starboard) "does not apply to steamboats crossing the river."

It does apply whenever the two boats meet, whether approaching each other upon courses either directly or obliquely opposed.

The general law of navigation prescribes the same rule.

When the course of one boat is at right angles to that of the other, the question of negligence depends upon the particular circumstances of the case, and not *alone* upon the question, which turned first, if, under the circumstances, the boat that first turned from her course, turned in the wrong direction.

THIS action was brought by the owners of a steamboat, to recover damages for injuries suffered by a collision with a ferry boat, belonging to the defendants. It appeared that the plaintiffs' steamer had left one of the slips on the easterly side of the Hudson River, at the city of New York, bound to Albany, and that the defendants' boat had come from a wharf at Hoboken, on the westerly side of the river, bound to New York. The respective starting points were considerably removed from

Hunt *v.* The Hoboken Land Improvement Company.

direct opposition to each other, the situation of that of the defendants' boat being to the north of that of the other steamer. The testimony relative to the positions of the vessels at the time of the collision was conflicting, and it was left uncertain whether they were approaching each other in directions northerly and southerly respectively, or were moving in a direction opposed to each other, obliquely crossing the river, or whether the course of one was at right angles to that of the other, and, consequently, whether their courses were directly or obliquely opposed.

The cause was tried by a justice of the Marine Court, with a jury. The plaintiffs obtained a verdict and judgment, from which the defendants appealed.

The questions determined arose upon the ruling of the justice in admitting the testimony relative to the prospective profits of the plaintiffs' steamer on her contemplated return trip from Albany, and upon instructions given to the jury in the charge. These, with the facts bearing upon them, sufficiently appear in the opinion.

By THE COURT. WOODRUFF, J.—So far as this appeal rests upon the ground that the verdict of the jury was against the weight of evidence, it cannot be sustained. Although the impression left upon my own mind, after a careful examination of the evidence, is, that the collision in question was caused by want of care or reasonable skill on the part of the plaintiffs; yet the evidence was conflicting, and if the question of negligence had been left to the jury, under a charge free from error, their verdict should be held conclusive on that question.

But, for other reasons, the judgment must be reversed.

First. I regard it as the settled law of this State that, in such cases, the plaintiff cannot recover for probable loss of profits. Indeed, if the evidence were such as to fix, with a precision amounting to legal certainty, the amount of profits which would have been realized, I think they could not have been allowed; and it appears to be conceded that such is the rule,

as settled by the late Supreme Court, in *Finch* v. *Brown*, 13 Wend. 601, and followed by the Superior Court, in *Fitch* v. *Livingston*, 4 Sand. 514.   Still less was it proper to suffer the jury to estimate the probable results of a trip from Albany to New York, subject to the multiplied contingencies which might affect the amount, or defeat the profits altogether.   I have repeatedly acted upon this view of the subject, in cases involving the like principle, and I am satisfied it is best suited to do justice.   Obviously, if the probable profits of one trip might be estimated and recovered, there is no reason for confining the plaintiffs to one trip.   All the trips the vessel would have made in due course of business during the period she was necessarily detained for repairs, might as well have been taken into the estimate as the one trip claimed by the plaintiffs' counsel; and it is not clear upon the return, although the offer of evidence of the daily earnings was made with reference to the trip down, whether the jury may not have given it a more extended application.   Be this as it may, the evidence was improper.

Secondly. It is suggested that the judgment should not be reversed for this cause, but that at most we should correct the amount.   We could do this by suffering the plaintiffs to retain their judgment for the amount of the repairs, which amount was admitted, if there was no other error; but it would be difficult for us, upon the evidence, to say how much of the passage money and freight, for the upward trip, should be allowed; and, besides, we do not think it would be just to confine the plaintiffs to the mere act of repairs; they were (if entitled to recover at all) entitled to have all their expenses, consequent upon the delay, which were made necessary by the injury.   It may be, that the jury have not given too great an amount, but we deem it, in general, unsafe to attempt to modify a verdict when we cannot see the items themselves which have entered into the verdict.   We could, however, safely give the plaintiffs an option to retain their judgment for a reduced sum, if they elected so to do, and I should be disposed to give them that option, had not the jury rendered their verdict upon the main

question, viz. that of the defendants' liability, upon instructions from the court, which were, I think, erroneous.

The judge charged the jury, peremptorily, that the statute of this state, requiring steamboats, when meeting, to go to the starboard, did not apply to vessels crossing the river; and that, if the plaintiffs' boat sheered to the larboard, to go under the stern of the defendants' boat, before the latter turned to starboard, it was the duty of the latter to have kept a straight course.

This instruction, in effect, took from the jury almost the whole question of negligence, which it was peculiarly their province to consider and determine.

Whether the statute in question applied to these two vessels or not, depended upon the course upon which they were respectively moving when they were meeting each other; or, perhaps, more properly, whether their courses were such that they could be said to be "meeting" each other at all. It did not at all depend upon the question whether they were "crossing the river," or not. If the course of both was in a direction crossing the river, the statute applied to them just as truly as if their course was "up or down the river." There was a conflict of evidence in relation to their course, and the maps show that there was room for this conflict. Some of the evidence rendered it in a high degree probable that the plaintiffs' boat, coming out of her slip on the east side of the river, was on a northwest course towards the centre of the river upwards; while the defendants' boat, bound for a point half a mile below Hoboken, coming out of her slip on the west side of the river, was on a southeast course across and downwards. If this were so, the statute plainly applied to both boats, and the turning of the plaintiffs' boat to larboard was a plain violation of the statute, while the turning of the defendants' boat was in obedience to its requirements. Indeed, if the course of the two boats (though not directly parallel and opposite to each other), was oblique to each other in contrary directions, the statute would still apply, and every reason for its application would exist. The inquiry for the jury was not whether the defend-

ants' boat was "crossing the river," but was the course of the vessels opposed directly or obliquely to each other at the time? and I think the case should not have been, in this aspect, taken from their consideration.

Doubtless, when the course of one boat is at right angles to that of the other, the question of care or negligence must be governed by other considerations; and, if the words of the charge could be deemed to impart such a state of things by the words "crossing the river," a further objection to the charge would still exist, viz. that it was unqualifiedly and peremptorily true that, if the plaintiffs' boat turned to the larboard before the defendants' boat turned to the starboard, the defendants' boat was in fault in not keeping her course.

Independent of the statute, the general rule of navigation, applied to steamboats, requires that, "when steamboats on different courses must cross so near that, by continuing their courses, there would be risk of coming in collision, each vessel should put her helm to port, so as always to pass on the larboard side of each other." This rule is subject to exception in circumstances of exigency, and unforeseen embarrassment, and unavoidable difficulty; but, of its general application in cases not covered by the statute, I have no doubt.

It was, therefore, proper for the jury to consider whether the plaintiffs' boat, in turning to the left, was not in part in fault. Indeed, if there were no special circumstances found to justify a departure from the rule, I think she might properly have been declared in fault, as matter of law; and, if she was in fault in making this turn, and that turn contributed to the accident, she was not entitled to recover, although it may have been made a moment before the turning of the defendants' boat to starboard. The defendants had a right to assume that the plaintiffs would observe the proper rule, and are not to be reckoned in fault, because the move of the plaintiffs' boat was first if it was wrong.

I think the judgment must be reversed.

Judgment reversed.