On the 15th day of July, 1854, in the city of Syracuse, the defendant, by the careless management, or through the insufficient condition, of one of its engines, set fire to its woodshed, and a large quantity of wood therein. The plaintiff's house, situated at a distance of one hundred and thirty feet from the shed, soon took fire from the heat and sparks, and was entirely consumed, notwithstanding diligent efforts were made to save it. A number of other houses were also burned by the spreading of the fire. The plaintiff brings this action to recover from the railroad company the value of his building thus destroyed. The judge at the Circuit nonsuited the plaintiff, and the General Term of the fifth district affirmed the judgment.
The question may be thus stated: A house in a populous city takes fire, through the negligence of the owner or his servant; the flames extend to and destroy an adjacent building: Is the owner of the first building liable to the second owner for the damage sustained by such burning?
It is a general principle that every person is liable for the consequences of his own acts. He is thus liable in damages for the proximate results of his own acts, but not for remote damages. It is not easy at all times to determine what are *Page 211 
proximate and what are remote damages. In Thomas v.Winchester (2 Seld., 408), Judge RUGGLES defines the damages for which a party is liable, as those which are the natural or necessary consequences of his acts. Thus, the owner of a loaded gun, who puts it in the hands of a child, by whose indiscretion it is discharged, is liable for the injury sustained by a third person from such discharge. (5 Maule Sel., 198.) The injury is a natural and ordinary result of the folly of placing a loaded gun in the hands of one ignorant of the manner of using it, and incapable of appreciating its effects. The owner of a horse and cart, who leaves them unattended in the street, is liable for an injury done to a person or his property, by the running away of the horse (Lynch v. Nurdin, 1 Adol. Ellis, N.S., 29;Illidge v. Goodin, 5 Car. P., 190), for the same reason. The injury is the natural result of the negligence. If the party thus injured had, however, by the delay or confinement from his injury, been prevented from completing a valuable contract, from which he expected to make large profits, he could not recover such expected profits from the negligent party, in the cases supposed. Such damages would not be the necessary or natural consequences, nor the results ordinarily to be anticipated, from the negligence committed. (6 Hill, 522; 13 Wend., 601; 3 E.D. Smith, 144.) So if an engineer upon a steamboat or locomotive, in passing the house of A., so carelessly manages its machinery that the coals and sparks from its fires fall upon and consume the house of A., the railroad company or the steamboat proprietors are liable to pay the value of the property thus destroyed. (Field v. N.Y. Central R.R., 32 N.Y., 339.) Thus far the law is settled and the principle is apparent. If, however, the fire communicates from the house of A. to that of B., and that is destroyed, is the negligent party liable for his loss? And if it spreads thence to the house of C., and thence to the house of D., and thence consecutively through the other houses, until it reaches and consumes the house of Z., is the party liable to pay the damages sustained by these twenty-four sufferers? The counsel for the plaintiff does not distinctly claim this, and I think it would not be seriously *Page 212 
insisted that the sufferers could recover in such case. Where, then, is the principle upon which A. recovers and Z. fails?
It has been suggested that an important element exists in the difference between an intentional firing and a negligent firing merely; that when a party designedly fires his own house or his own fallow land, not intending, however, to do any injury to his neighbor, but a damage actually results, that he may be liable for more extended damages than where the fire originated in accident or negligence. It is true that the most of the cases where the liability was held to exist, were cases of an intentional firing. The case, however, of Vaughn v. Menlove
(32 Eng. C.L., 613) was that of a spontaneous combustion of a hay-rick. The rick was burned, the owner's buildings were destroyed, and thence the fire spread to the plaintiff's cottage, which was also consumed. The defendant was held liable. Without deciding upon the importance of this distinction, I prefer to place my opinion upon the ground that, in the one case, to wit, the destruction of the building upon which the sparks were thrown by the negligent act of the party sought to be charged, the result was to have been anticipated the moment the fire was communicated to the building; that its destruction was the ordinary and natural result of its being fired. In the second, third or twenty-fourth case, as supposed, the destruction of the building was not a natural and expected result of the first firing. That a building upon which sparks and cinders fall should be destroyed or seriously injured must be expected, but that the fire should spread and other buildings be consumed, is not a necessary or an usual result. That it is possible, and that it is not unfrequent, cannot be denied. The result, however, depends, not upon any necessity of a further communication of the fire, but upon a concurrence of accidental circumstances, such as the degree of the heat, the state of the atmosphere, the condition and materials of the adjoining structures and the direction of the wind. These are accidental and varying circumstances. The party has no control over them, and is not responsible for their effects. *Page 213 
My opinion, therefore, is, that this action cannot be sustained, for the reason that the damages incurred are not the immediate but the remote result of the negligence of the defendants. The immediate result was the destruction of their own wood and sheds; beyond that, it was remote.
There are some cases which, from the frequency of their citation, and their apparent inconsistency with the view I have taken, should be considered in this connection. The case ofScott v. Shepherd (2 Wm. Bl., 893) is that of the celebrated squib case. On the evening of a fair day at Melborneport, the defendant, a lad, threw a lighted squib, or serpent, made of gunpowder, from the street into the market house, which was a covered building, supported by arches, inclosed at one end, but open at the other and at both sides. A large concourse of people were assembled in the market house. The lighted squib, so thrown by the defendant, fell upon the stand of one Yates, where gingerbread, cakes and pies were sold. To prevent injury to himself and the wares of Yates, one Willis instantly took up the squib from the stand and threw it across the market house, when it fell upon another stand of one Ryal, who sold the same sort of wares. Ryal instantly took up the squib, to save his own goods, and threw it to another part of the market house. In its passage, it struck the plaintiff, then in the market house, in the face, and bursting, put out one of his eyes. A recovery of £ 100 by the plaintiff was sustained by the English Court of Common Pleas. The same case is reported in 3 Wilson, 403.
The decision in this case was that of a divided court, that learned judge, Sir WILLIAM BLACKSTONE, not concurring in the result. It was a question chiefly of pleading whether the action should be trespass or case, and comparatively little attention was given to the question of whether a right of action existed in any form. An examination of the opinions shows that the judges, who concurred in the result, differed entirely in their view of the principle on which it was based. Thus, NARES, J., placed his opinion upon the ground that the act of the defendant in throwing the squib was illegal, both at common law and under the statute 9 and *Page 214 
10 William III; and that being unlawful, the defendant was liable to answer for the consequences, whether the injury was mediate or immediate; that he who did the first wrong was answerable for all the consequential damages. GOULD, J., concurring in the general view of Justice NARES, placed his opinion upon the ground, that the defendant was to be considered as if he himself had personally thrown the squib in the plaintiff's face, and that what Willis and Ryal did in their terror was the inevitable consequence of the act of the defendant.
DE GREY, Ch. J., on the contrary, says that the question does not turn upon the lawfulness or unlawfulness of the original act, but that the true question is, whether the injury was the direct and immediate act of the defendant. He says, also, "I look upon all that was done, subsequent to the original throwing, as a continuation of the first force and first act, which will continue until the squib was spent by bursting. It has been urged, he says, that the intervention of a free agent will make a difference, but I do not consider Willis and Ryal as free agents in the present case, but acting under a compulsive necessity for their own safety and self-preservation." The reasoning of the learned chief justice and of Justice NARES would not bring the present case within the principle of their decision, for the act of the defendants, complained of here, was not one of affirmative illegality; it was simply the absence of proper care and attention, and was not, in itself, the subject of a criminal complaint. Neither was the continuance of the fire in the present case a "compulsive necessity," such as was imputed to Ryal and Willis in the case under discussion.
The case of Vandenburgh v. Truax (4 Denio, 464) is another case frequently cited upon this branch of the law. Some difficulty occurred between the defendant and a negro boy in the streets of Schenectady. The boy got loose from the defendant and ran away. The defendant took a pickaxe and followed the boy, who fled into the plaintiff's store, the defendant pursuing him there with the pickaxe in his hand. The boy ran behind the counter, as was supposed, to save *Page 215 
himself from being struck with the axe, and in fleeing, he knocked out the faucet from a cask of wine, and a portion of the liquor was spilled and lost. For that loss the plaintiff recovered damages in the justice's court where he commenced his action. The principle on which the action was sustained in the Supreme Court was, that the consequences complained of, naturally and directly resulted from the careless or improper conduct of the defendant, and it is illustrated by the cases of the careless discharge of a gun, the letting loose a ferocious animal among a multitude of people, throwing a stone from a house into a street where people are passing. As the principle adopted by the court was unquestionably sound, its particular application in that case is not material. It must be applied, according to sound judgment, in each case as it arises.
The same principle was announced in Guille v. Sawan (19 Johns., 381), where the defendant's balloon descended into the plaintiff's garden, and a crowd of people rushing in to relieve him, as well as from motives of curiosity, trod down the plaintiff's vegetables and flowers. For the injury done by himself, as well as by the crowd, the defendant was held to be answerable. He was held to have substantially requested the presence of the crowd there, and, therefore, to have been responsible for the results of their action.
Without determining its effect, it will be observed, that the fact exists in each of these cases, that the first act or impulse was voluntary and intentional on the part of the defendant. Scott intentionally threw his squib; Vandenburgh intentionally drove the negro boy; and Sawan intentionally descended into the plaintiff's garden and invoked the aid of the multitude. In each case, too, the result was deemed by the court to be the inevitable consequence of the original unlawful or improper act. There would seem to be no inconsistency in principle between either of these cases and the conclusion already announced in the present case. Whether the principle has been always correctly applied, it is not necessary to determine.
That the defendant is not liable in this action may also be *Page 216 
strongly argued, from the circumstance that no such action as the present has ever been sustained in any of the courts of this country, although the occasion for it has been frequent and pressing. Particular instances are familiar to all, where such claims might have been made with propriety. The instance of the Harpers, occurring a few years since, is a striking one. (23 N Y, 441.) Their large printing establishment, in the city of New York, was destroyed by the gross carelessness of a workman, in throwing a lighted match into a vat of camphene. The fire extended, and other buildings and much other property was destroyed. The Harpers were gentlemen of wealth, and able to respond in damages to the extent of their liability. Yet we have no report in the books, and no tradition, of any action brought against them to recover such damages. The novelty of the claim, as was said by Judge BEARDSLEY, in Costigan v. M. H.R.R.Co., where the occasion for its being made had been so common, is a strong argument against its validity. (2 Denio, 609.) InThe People v. Clark (10 Barb., 143), Judge CADY says: "The fact that the plaintiffs have never before this commenced an action to vacate a grant made by the king, because it was made upon false suggestions, furnishes strong evidence that the plaintiffs never had the right to bring such an action." It was Littleton's rule, "what never was, never ought to be." (1 Ver., 385.)
To sustain such a claim as the present, and to follow the same to its legitimate consequences, would subject to a liability against which no prudence could guard, and to meet which no private fortune would be adequate. Nearly all fires are caused by negligence, in its extended sense. In a country where wood, coal, gas and oils are universally used, where men are crowded into cities and villages, where servants are employed, and where children find their home in all houses, it is impossible that the most vigilant prudence should guard against the occurrence of accidental or negligent fires. A man may insure his own house or his own furniture, but he cannot insure his neighbor's building or furniture, for the reason that he has no interest in them. To hold that the owner must not only meet his own loss by fire, but that he must *Page 217 
guarantee the security of his neighbors on both sides, and to an unlimited extent, would be to create a liability which would be the destruction of all civilized society. No community could long exist, under the operation of such a principle. In a commercial country, each man, to some extent, runs the hazard of his neighbor's conduct, and each, by insurance against such hazards, is enabled to obtain a reasonable security against loss. To neglect such precaution, and to call upon his neighbor, on whose premises a fire originated, to indemnify him instead, would be to award a punishment quite beyond the offense committed. It is to be considered, also, that if the negligent party is liable to the owner of a remote building thus consumed, he would also be liable to the insurance companies who should pay losses to such remote owners. The principle of subrogation would entitle the companies to the benefit of every claim held by the party to whom a loss should be paid.
In deciding this case, I have examined the authorities cited from the Year Books, and have not overlooked the English statutes on the subject, or the English decisions extending back for many years. It will not be useful further to refer to these authorities, and it will be impossible to reconcile some of them with the view I have taken.
The remoteness of the damage, in my judgment, forms the true rule on which the question should be decided, and which prohibits a recovery by the plaintiff in this case.
Judgment should be affirmed. *Page 218