LEWIS F. ALLEN, RESPONDENT, v. THE COMMISSIONERS OF THE LAND OFFICE OF THE STATE OF NEW YORK ET AL., APPELLANTS.

*Sale of lands by State—Notice—Payment.*

The failure of the Commissioners of the Land Office to give to the occupant of lands ordered to be resold notice to remove therefrom is not fatal to the title derived from such resale.

The statute providing for the sale of unappropriated lands belonging to the State, and requiring the purchaser of each tract to pay to the Surveyor-General within forty-eight hours after sale the first payment thereon, is not applicable to the cases of resale ordered because of failure to make payment.

APPEAL by the Defendants from a judgment rendered at General Term, in the Eighth District, affirming a judgment recovered by the Plaintiff at the Special Term, on demurrer to the complaint.

The action was brought to restrain the Defendants by injunction from proceeding either by action or by warrant under the statute to remove the Plaintiff from the possession of lot number six, Grand Island, in the Niagara river.

It was set forth in the complaint that on the 3d of June, 1825, the lot was sold by the State to Samuel Leggett, for $1,250, on which $157 was paid, and a certificate was then executed to Leggett by the Surveyor-General.

On the first of November, 1833, Leggett assigned his interest in the certificate to Stephen White, and after several intermediate assignments, the Plaintiff became the owner of the certificates about the 3d of February, 1851, and that the Plaintiff has since that date been in the possession of the premises.

That on the 14th of October, 1858, in pursuance of notice duly published by the State Engineer and Surveyor, the lot was sold at public auction to J. Moreau Smith, for $1,846.26. By the conditions of the sale one-fourth part of the purchase-money was to be paid down at the sale, or within forty-eight hours thereafter.

J. Moreau Smith, purchaser at the resale, did. not in fact pay one-fourth of the purchase-money till the 15th of January, 1859, when he made that payment, being. $461.57, and executed to the State Engineer and Surveyor his.bond for the. remaining sum bid for the lot, and received from the State Engineer and Surveyor the certificate of sale as provided in section 25, part 1, title 5, chapter 9, article 3 of the Revised Statutes.

On the 15th of January, 1859, Mudgett and Herrick became the purchasers and assignees from Smith of his certificate and interest in the land, and applied for letters-patent, which were issued to them on the 28th of December, 1859, an undivided half to each.

No interest had been paid on the certificate to Leggett after the year 1849. Before 1850 the Plaintiff had paid the interest, but it was always done in pursuance of a notice or request from the office of the Attorney-General, and the Plaintiff supposed no proceedings could be taken to enforce payment without giving such .notice. No actual notice of the proceedings for the resale had been given to the Plaintiff.

On the 15th of January, 1859, the Plaintiff was informed by Smith of his purchase of the land, and afterward, during that month, offered Smith to pay the purchase-money and expenses if he would assign his interest to the Plaintiff, which Smith refused to do.

On the 18th of May, 1860, the Attorney-General served on the Plaintiff a notice, that at a meeting of the Commissioners of the Land Office, held the 1st of March, 1860, it was resolved that notice be given to the occupants of lands resold on the 14th of October, 1858, to remove therefrom, and in case of a neglect to comply with such notice that the District Attorney should be directed to enter a complaint before the County Judge pursuant to section 65 (52), part 1, chapter 9, title 5 of the Revised Statutes, and the Plaintiff was afterward informed by Fithian, District Attorney of Erie county, that he had been instructed by the Attorney-General to institute proceedings to remove the Plaintiff from the premises.

The bill prayed for an injunction, and that the letters-patent to Mudgett and Herrick be cancelled.

The Defendants demurred to the complaint.

The Special Term gave judgment for the Plaintiff, which the General Term affirmed, and the Defendants appeal to this Court.

The Supreme Court held that the omission of Smith to pay one-fourth of the purchase-money within forty-eight hours after the sale was a fatal defect, and made the sale void.

And that it was the duty of the Commissioners to give to the occupant a notice to remove from the land, under section 65, at the time they directed a resale of the premises, and that their omission to do so was fatal to the title derived from the resale.

*A. J. Parker* for Appellants.

*John Ganson* for Respondents.

HUNT, Ch.J.—The point "that it was the duty of the Commissioners to give to the occupant a notice to remove from the land at the time they directed a resale of the premises, and that their omission to do so was fatal to the title derived from the resale, has been recently passed upon in this Court. In Candee *v.* Hayward (37 N. Y. 653), the precise point was presented and was over-ruled. In giving the decision, Judge Grover uses the language following: "Section sixty-five provides that whenever the Commissioners direct a resale pursuant to the Act, they shall cause notice to be given to every occupant of such land to remove therefrom, and that, together with the two succeeding sections, provides a summary mode of removing such occupant, in case of neglect or refusal to comply with such notice. It is manifest that a compliance with these provisions by the Commissioners is not made a condition precedent to the power of sale, and that the validity of the sale is not dependent upon a compliance therewith. There is nothing in these sections indicating such an intention. The design of the Legislature was merely to furnish to the Commissioners a remedy for the speedy removal of the occupants from the land, and not to require notice to those interested, to

enable them to protect their interests." Like the present, that was a case of resale on account of non-payment of arrears. That case is conclusive against the present point.

It was further held by the Court below, and is strenuously maintained by the Respondent's counsel here, that the omission of Smith to pay one-fourth of the purchase-money within forty-eight hours after the sale, was a fatal defect, and rendered the sale void. In providing for the sale of unappropriated lands belonging to the State, it is enacted in section 23 (1 R. S., p. 202), that "within forty-eight hours after each sale, the purchaser of each tract shall pay to the Surveyor-General the first payment required thereon, and execute a penal obligation conditioned for the payment of the residue of the purchase-money in six equal annual payments, with interest at the rate of six per cent." If the purchaser fail or neglect to make such payment and deliver such obligation, he shall forfeit the sum of fifty dollars, to be recovered with costs (§ 24).

In my opinion this section is not applicable to a case like the present, of a resale of lands and a neglect to keep up the payments, but only to a case of the first or original sale by the State. The statute first provides (§ 18) that the Commissioners of the Land Office may direct the Surveyor-General to sell the unappropriated lands belonging to this State, not otherwise directed to be disposed of, at public auction. If they have been previously not only directed to be, but have actually been disposed of by a sale to a purchaser, this section does not apply. The Commissioners are then directed (§ 19) to furnish the Surveyor-General with a minimum price, and to designate the papers in which he shall advertise. They shall also (§ 20), previous to every sale, fix the amount of purchase-money to be paid at the sale, which shall not be less than twenty-five, nor more than seventy-five per cent. of the purchase-money. It is next provided (§§ 21, 22) that all sales shall be held in the city of Albany, unless otherwise directed, and that eight weeks' previous notice shall be given of the time, place, and conditions of such sale. Then comes the section in question (§ 23), which provides that, within forty-eight hours after

each sale, the purchaser shall pay the first payment required thereon, and execute a penal obligation for the payment of the residue; which, if he neglect to do, he is subject to a penalty of fifty dollars (§ 24). On the receipt of such payment and the delivery of such obligation, the Surveyor-General shall give the purchaser a certificate containing the name of the purchaser, a description of the land, the sum paid, and the sum remaining due. This certificate authorizes the entry upon the land by the purchaser, its use and occupation by him, and upon payment of the amount remaining unpaid, letters-patent are to be issued to the purchaser by the Comptroller in the name of the State (§§ 26, 27).

It will be observed that these provisions make up a distinct system for disposing of the unsold lands of the State. It will be seen, also, that they contain no provision for redemption from the purchaser, and for the excellent reason that there is ho one entitled to redeem or having any pretence of an interest in the land. The State is the owner and is the seller, giving a title without qualification or restriction. It is in making sales of this character only that we find the provision requiring the payment of one-fourth of the purchase-money within forty-eight hours after the sale.

Various provisions are there, and all relating to the sales of such lands and the duties of public officers, not important to be noticed here, until we reach the forty-sixth section. That section provides that if any payment of the obligations authorized to be taken by the Surveyor-General on a sale of lands (as before recited) shall remain due one year after the same ought to have been made, the Commissioners may direct the Comptroller to put the obligation in suit, or may direct the Surveyor-General to sell the land again for the payment of which the obligation is given, and all previous payments are declared to be forfeited to the State.

It was under this provision that the lot in question was sold to Smith. It had been sold in 1852 to Leggett, the obligation to pay the unpaid purchase-money had been given, the plaintiff had been in possession for many years, but had neglected to pay his principal, or to make payments of his interest for several succes-

sive years.  The lot was directed to be sold; was sold under the authority of section forty-six, above recited, and bid in by Mr. Smith. The statute then provides that if a purchaser is not found who offers the amount due for principal and interest, the Surveyor-General shall bid in the same for the State (§ 47), and that he may sell such lots to any person, always giving a preference to the last owner, if he shall apply within three months after the sale, for the amount at which the same was sold, on the same terms and conditions as he is authorized to sell the unappropriated lands of the State (§ 48).

This summary comprises a statement of the whole system.  It shows that, as an original sale, a proportion of the purchase-money, not less than one-fourth nor more than three-fourths, to be fixed by the Commissioners, shall be paid within forty-eight hours after the sale; that an obligation shall be given for the balance, and that a certificate shall be issued to the purchaser. If the purchaser makes his remaining payments, he receives letters-patent from the State for the land.  If he does not, it may be ordered to be sold again.  If so sold again, the purchaser at such last sale bids the whole amount unpaid, and may be required by the Commissioners to pay the whole amount in cash, or such portion in cash, or at such other times, as they may direct.  The statute is silent on the subject.  In the event that no purchaser is found, but the Surveyor-General bids in the property, and the former owner applies to redeem, the Surveyor-General may sell to him on the like terms and conditions as on a sale of unappropriated lands.  This would, probably, include a payment within forty-eight hours.  I can, however, see absolutely nothing in the statute which makes this section (§ 23) applicable to the purchase by Smith.  If I rightly apprehend the decision of Candee v. Hayward, such is the view of the learned Judge giving the opinion in that case.  Whatever, therefore, may be the effect of the provision, it is not applicable to the case before us.

I am also of the opinion that upon its merits, if the statute is applicable, it is not entitled to the effect claimed for it.  The argument is based upon the language of the Court in Sharp v.

20

Speir (4 Hill, 76); Doughty v. Hope (3 Denio, 594); Powell v.
Tuttle (3 Comst. 396); Bloom v. Burdick (1 Hill, 131), and many
other cases, to the effect that the terms of a statute authority, by
which a man is deprived of his property, must be strictly pursued.
The books are, indeed, full of the cases to this effect, and the doc-
trine is expressed in the most emphatic language. It will be
found, however, that nearly all of these cases are those of proceed-
ings preliminary to the sale, when the requisites of the statute are
in the nature of precedent conditions. The sale is in the nature
of the execution of a power of attorney, and all the requirements
to authorize such sale, like requirements of a power of attorney,
must be strictly pursued (Hubbell v. Weldon, Lalor Sup. H & D.
139). The principle is not so apparent when the duty has been
completed in its substance, and subsequent omissions, in which
the party has no interest, are the subject of inquiry.

The case may, however, be better illustrated by a reference to
the provisions of the Revised Statutes respecting the sale of lands
for unpaid taxes (1 R. S. 408, 410). That statute enacts (§ 66)
that the owner or occupant of any land sold for taxes, may
redeem the same at any time within two years after the last day
of such sale. By section 76 it is further enacted that the Comp-
troller shall, at least six months before the expiration of the two
years, cause to be published, at least once a week for six weeks
successively, in all the public newspapers printed in this State,
and in such form as he shall deem best calculated to give general
notice, a notice that unless the lands sold shall be redeemed by
a certain day they will be conveyed to the purchaser. Much dis-
cussion has been had on this section, and various decisions had
in the different Courts of this State, whether the six weeks must
terminate before the six months commences, and whether the
omission to publish in a single newspaper will avoid the sale
(Doughty v. Hope, 3 Denio, 594).

This latter question has been pending in this Court for the last six
months, the Judges being, thus far, unable to agree upon a decision.
Section 64 of the same statute enacts that the purchasers at such
sales shall pay the amount of their respective bids to the Treasurer

within forty-eight hours after the sale, and, if any purchaser shall fail or neglect to do so, the Attorney-General may commence a suit against him and recover the amount of his bid.   Whatever doubt may have existed as to the other sections referred to, no such point has ever been raised upon section 64. . I am not aware that it has ever been claimed in this Court, or in any Court of this State, that the delay to pay the amount of a bid for more than forty-eight hours rendered the sale void ; and upon inquiry of my brethren, I cannot learn that any one of them had ever had such claim made before him.   The tax sales of the State are protracted over a period of many weeks, and sometimes months ; and, in the delay attendant upon so large an amount of sales, the fact of a longer delay than forty-eight hours must have occurred in many instances on every State sale.   The absence of the claim, under such circumstances, furnishes a strong evidence that the claim would not be a good one.   (Ryan *v.* N. Y. Central R. R. Co., 35 N. Y. 210.)

The distinction upon the statutory provisions is this : that in the case of a publication for six months in every newspaper in the State, the requirement is for the benefit, real or supposed, of the party whose lands are sold, and the law insists that it shall be performed before his title shall be divested.   In the requirement that a payment, partial or total, shall be made within forty-eight hours after the sale, no reference is had to the interest of the party taxed.   It is an arrangement of convenience, for the advantage of the State only, and is not made for the benefit of the party taxed.   The State may, therefore, at its convenience, waive the requirement, and no one has cause of complaint.   This distinction, as existing in the facts of the case, will be found in all the authorities cited upon the subject.   Thus, in Sherwood *v.* Reade (7 Hill, 431), Judge Beardsley uses the following language : " The authority to sell, as conferred by this statute, is special in its nature, and must be strictly pursued or the sale will be invalid.   The purchaser has notice of the extent and the limitations of the power to sell, for it depends exclusively upon a public statute of the State, and he buys at his peril.   If he purchases at a sale which the statute authorizes to be made, and which is conducted according to its provisions, a

valid title is acquired ; but if the sale is not thus authorized and conducted it is of no effect whatever."

In that case the commissioners for loaning certain moneys deposited with the United States, according to notice, exposed for sale, the first Tuesday of February, certain premises owned and mortgaged to the State by one William Sherwood.   They were struck off to William B. Sherwood, who, after some delay to enable him to obtain the money, declared his inability to complete the purchase. The Commissioners thereupon offered the premises again for sale, and they were purchased by the Defendant Reade.   The statute provided that in the event of a failure to complete the sale, like that of Sherwood, the Commissioners should themselves enter upon the lands on behalf of the State, lease them as well as they were able, and, on the first Tuesday of September following, again expose them to sale, and then, if need be, take possession of the same on behalf of the State.   The Court held that the sale to Reade was unauthorized by the statute, and that he acquired no title.   The terms of the authority to sell had been manifestly departed from. The Chancellor, in the same case (8 Paige, 633), had held that a good title passed.   His decision was reversed by the decision of the Court of Errors in 7 Hill, supra.   So in Sharp v. Speir (4 Hill, 76), Judge Bronson lays down the rule that one claiming title to real estate in virtue of a sale made to him by a municipal corporation for unpaid taxes, must assume the onus of showing that everything has been regularly done by the corporation which the statute makes essential to the due execution of their power to sell.   In that case it was held that a power to sell lands for taxes imposed on the land, did not justify a sale for taxes to be imposed upon the owners or occupants merely, and not on the lands.   It was also held that a power to sell for taxes did not authorize a sale for an assessment for benefit simply.

Of the same general character are the numerous cases cited by the Respondent's counsel and referred to in Sherwood v. Reade and Sharp v. Speir.   They are cases in which the preliminary requirements to the sale were not complied with, or in which the terms of a statute for redemption, evidently for the benefit of the

former owner, had not been followed.   None of them give coun-
tenance to the idea that, after a sale was had in pursuance of the
statute, and the premises struck off to a regular bidder, the law
in all its details having been complied with, the State would not
be at liberty to waive payment at the time specified in the statute,
or that mere indulgence or delay in exacting payment—payment
having been afterward fully made—would avoid the title of the
purchaser.   The objection is not a sound one.

The judgment of the General and Special Terms should be
reversed, and judgment ordered for the Defendants on the demur-
rer, with costs.

Judgment reversed.

<div style="text-align:right">

JOEL TIFFANY,
State Reporter.