## The Oil Creek and Allegheny River Railway Co. *versus* Keighron.

1. Connected with a railroad was a branch on which were oil stations where the main company left their cars to be filled by the owners of the oil and then moved them. Two cars coupled together were placed at a station on a steep grade under charge of the oil company's superintendent, none of the railroad company's servants being there. The superintendent having filled one car, detached it to fill another ; the first car ran down the grade, and collided with a locomotive which set fire to the cars and burned a neighboring house. In a suit against the company for burning the house : *Held*, that as between the company and third persons, they were liable for the negligence of the superintendent as their servant.

2. Damages to be recovered must be the natural and proximate consequence of the act complained of.

3. Under the circumstances of this case the cause not too remote.

4. Penna. R. R. *v.* Kerr, 12 P. F. Smith 353, referred to.

October 23d 1873. Before READ, C. J., AGNEW, SHARSWOOD and MERCUR, JJ.

Error to the Court of Common Pleas of *Venango county :* No. 82, to October and November Term, 1873.

This was an action on the case for negligence, brought August 7th 1871, by Timothy Keighron against the Oil Creek and Allegheny River Railway Company. The injury complained of was the burning of a house of the plaintiff with its contents, by the collision of an oil-car of the defendants with a locomotive, by which the car and locomotive were fired, and the fire communicated to plaintiff's house.

The house was situated within about twenty feet of the Cherry Run Branch of the defendants' road; the branch was used for running supplies to the oil-wells on Cherry Run, and taking oil thence to the main track; the empty tank cars were taken up and left at the different oil stations; they were then collected into a train and run down to the main track.

The cause was tried November 13th 1872, before Trunkey, P. J.

E. W. Hines testified that he was superintendent of the Union Petroleum Company, on Cherry Run : about 23d of April 1868, two cars coupled together were left on the track by the company for him to fill; he filled one; in order to load the second car, it was necessary to move it further down; he could not do so without disconnecting them; he could not "drop" both at once; he disconnected them and then loosened the brake; the car would not start, and he jarred it till it started; he tried to tighten the brake and fell off; he drew himself up and tried to set the brake, bearing on it as hard as he could, but could not stop the car; the car got to going so fast that he jumped off; the brake shoved on one side so that it would not operate on the wheel; he first discovered this when he got off the car. The car ran into a locomotive standing

[Oil Creek & Allegheny River Railway Co. v. Keighron.]

on the track; it burned the car of oil, the locomotive and one or two other cars. The house also was burned. The persons in the employ of the defendants put the cars into his charge. Witness was not a practical railroad man; he did not know the brake was insufficient before he took off the coupling.

On cross-examination, witness said that he was not an employee of the road; the cars were placed there for him to fill, that was all he had to do with them; the car would not have started had he not disconnected them; he shipped the oil; it was necessary the cars should be on the track that he might fill them; on the other car the brake was in good order; his company had no sidings and the cars were loaded on the track.

There was evidence that the locomotive with two or three cars had been standing in front of plaintiff's house for three-quarters of an hour before the accident; that the collision and the cars and the house all took fire at once; there was no one with the locomotive during that time.

For the defendants, Michael Silk, the conductor of the train testified that he had put the cars at the place of business of the Union Petroleum Company to be loaded with oil, with brakes on them securely coupled; one good brake would hold two cars; there was a good brake on each car; there was no necessity for uncoupling the cars. Hines had no authority or right to uncouple or interfere with the cars; the brake of the lower car was good except the dog; it was manageable by any one who knew anything about a brake; where one did not understand, the dog would slip up; all that was to do was to hold the dog down with the foot. The defendants used the Cherry Run branch as a switch and main track both; there were three cars to the locomotive; the end of the second car was opposite plaintiff's house; "after the car struck the engine, the engine and three cars were in a blaze as quick as could be;" witness noticed the house on fire fifteen or twenty minutes afterwards; the grade from the cars at the Union Petroleum Company's station to locomotive, was seventy feet to the mile, and the distance about half a mile; there was a curve which prevented them from seeing more than three hundred feet from the engine. Witness said that Hines had no experience as a railroad man.

There was other evidence of the same character as that of Silk: also that after the car was seen coming down the track there was not time to move the locomotive; that the hands would have been burned up, if they had remained on the locomotive; that the cars left at the Union Petroleum Company's station were securely fixed.

The following are points of the defendants with their answers:—

2. If the jury find from the evidence that the defendants' servants were guilty merely of general negligence in the management of their cars, and that the act of a third party contributed directly

[Oil Creek & Allegheny River Railway Co. *v.* Keighron.]

to the accident, the defendants are not liable, not being the proximate cause of the fire or accident.

"Answered in the affirmative; but if you also find, in connection with the facts assumed, that there was particular negligence by defendants' servants in reference to the particular car which caused the collision, and which contributed directly to the accident, then the principle stated in this point does not apply."

The court charged :—

"The defendants had a lawful right to use the road as their business or convenience·required.    That they left a train standing on the track, and left cars at various places for the purpose of delivering or receiving freight, is no cause for complaint.    There was nothing wrong in leaving two cars at the place of the Union Petroleum Company to be filled with oil.    Unless the plaintiff has proved negligence on the part of defendants' servants, he cannot recover. The burden of proof is upon him to show such negligence as directly contributed to and caused the loss.

["The plaintiff alleges that when the cars were left the brake upon one of them was out of order and known to be out of order by the conductor who left them; that they were left to be loaded with oil by Mr. Hines, superintendent of the Union Petroleum Company, and left in his charge while there; that no notice was given to Mr. Hines of the bad condition of the brake, and that he had no knowledge of it till the accident occurred; that he loaded the car with oil, when he attempted to move it so that he could load the other in the usual mode, and having started the car, by reason of the bad condition of the brake he could not stop it, and it ran down the grade, struck the standing locomotive, and directly set fire to the house.    Does the evidence affirmatively satisfy you of the facts so alleged?    If so, then there was negligence on the part of the defendants.    But, if the cars were left in good order, or if reasonable care had been used and there was no defect discovered by or known to the defendants' employees, there was no such negligence as renders the defendants liable for damages to the plaintiff."]

4. If the jury find from the evidence that the fire originated on the engine, and spread from thence to the other cars and from thence to the building, the cause would be too remote, and the plaintiff could not recover.

"Answered in the affirmative : but if the cars were attached to the engine when the fire broke out and quickly ignited and burnt with the engine, the whole being a connected train upon the track, and the burning mass directly, without any intervening agency, set fire to and destroyed the plaintiff's house, the cause was not too remote, and if the plaintiff has made out his case in other respects, he may recover."

5. Under the evidence in this case, the plaintiff is not enti-

[Oil Creek & Allegheny River Railway Co. v. Keighron.]

tled to recover, and the verdict of the jury must be for the defendants.

Refused.

The verdict was for the plaintiff for $750.

The defendants took a writ of error and assigned for error the answers to their points and the charge of the court in brackets.

*W. McNair*, for plaintiffs in error.—Unless Hines was the defendants' servant acting within the scope of his authority, they are not liable: Kerns *v.* Piper, 4 Watts 222; Bard *v.* Yohn, 2 Casey 487. To constitute Hines their agent they should have some control over him or right to discharge him: Shearman & Redfield on Negligence, sect. 73.

A man is answerable for the consequences of a fault only so far as they are natural and proximate and may be foreseen by ordinary forecast; and not for those which arise from a conjunction of his fault with other circumstances that are remote and extraordinary: Morrison *v.* Davis, 8 Harris 175; Scott *v.* Hunter, 10 Wright 192; Pennsylvania R. R. Co. *v.* Kerr, 12 P. F. Smith 353; Ryan *v.* New York Central R. R. Co., 35 New York 210; Penna. R. R. *v.* Beale, 23 P. F. Smith 506; N. Penna. R. R. *v.* Heilman, 13 Wright 60.

*J. H. Osmer* (with whom was *A. W. Covill*), for defendant in error, cited Empire Transportation Co. *v.* Wamsutta Oil & R. Co., 13 P. F. Smith 14; Johnson *v.* Bruner, 11 Id. 58.

The opinion of the court was delivered, January 5th 1874, by

Mercur, J.—Two tank-cars, coupled together, were placed by the defendant below upon its track, at the Union Petroleum Company's place of business. Hines was the superintendent of the petroleum company. The cars were placed there to enable him to fill them with oil. They were put in his charge for that purpose. While thus loading, Hines had the exclusive charge of the cars. The railway company left none of its regular employees in charge or control of them. The mode of filling the cars is to insert a pipe, connected with the tank in which the oil is stored, so that the oil may flow into the top of the car, and turn the stop-cock into the pipe. After the front car was filled, it was necessary to move it in order to advance the rear car sufficiently near to the · tank to connect with the pipe. The probable necessity of this movement of the cars must have been known to the defendant below, yet it furnished Hines with none of its other employees to assist therein. Hines had had no experience in handling cars. The down grade towards the place of collision, and of the burning, was seventy feet to the mile. Where the cars stood, they were securely held by brakes. Hines found himself unable to start both cars together. He therefore dis-

[Oil Creek & Allegheny River Railway Co. *v.* Keighron.]

connected them, and started the front car. It appears the brake upon this car was not in good condition. The dog would slip up, loosening its grasp. Hines was ignorant of its defective condition, and was unable to tighten the brake, or stop the car. It ran into a locomotive standing on the track. The collision caused the car of oil, locomotive, one or two other cars, and the house of the plaintiff below, to burn.

It is claimed, by the defendant below, that Hines should have moved the two cars together; that the brake upon the rear car was in good condition, and sufficient to have stopped and held both cars; and that he had no authority to uncouple them. They, therefore, deny any liability for his unauthorized act.

The cars, however, were at the time of the injury subject to the control and management of Hines, for the purposes aforesaid. His authority was general within the limits of the special purpose. That purpose was, to fill the cars with oil; that was the general object for which the cars were intrusted to him. It was within the general scope of his powers so to use and move the cars, as to facilitate the loading thereof. As to third persons, he was clearly the agent of the railway company, and it is liable for his acts.

The other branch of the defence was, that the injury was too remote. To this the court answered : "If the cars were attached to the engine when the fire broke out, and quickly ignited and burned with the engine, the whole being a connected train upon the track, and the burning mass directly, and without any intervening agency, set fire to and destroyed the plaintiff's house, the cause was not too remote."

The rule undoubtedly is, that the damages to be recovered must be the natural and proximate consequence of the act complained of. This, I understand to be, that the cause alleged produced the injury complained of, without any other cause intervening. The distinction between remote and proximate cause will be found fully discussed in Ryan *v.* The New York Central Railroad Company, 35 N. Y. 210 ; and in Pennsylvania R. R. Co. *v.* Kerr, 12 P. F. Smith 353.

We think the answers of the learned judge were correct, and discover no error in the charge.

Judgment affirmed.