Kuhn *v.* Jewett.

HENRY KUHN and CHARLES NEEB

*v.*

HUGH J. JEWETT, receiver of the Erie Railway Company.

32   647
55L  210

1. Damages caused by negligence, to be recoverable, must be not only its natural, but also its proximate, consequence. And "proximate," as here used, means closeness of causal connection, and not nearness in time or distance, and is intended to qualify the generality of the idea expressed by the word "natural."

2. In cases where fire is negligently started, but is not immediately communicated to the property destroyed, but is communicated from one building to another until it reaches the property destroyed, causal connection will only cease when, between the negligence and the damage, an object is interposed which would have prevented the damage, if due care had been taken.

3. When the burning matter is oil, a running stream may form a natural link in the chain of causation.

4. Where a fire originates in the carelessness of a defendant, and is carried directly by a material force, whether it be the wind, the law of gravitation, combustible matter existing in a state of nature, or a running stream, to the plaintiff's property, and destroys it, the defendant is legally answerable for the loss.

On application for a remedy against receiver, heard on petition and proofs taken orally before the vice-chancellor.

*Mr. Albert Comstock,* for petitioners.

*Mr. R. W. Parker,* for receiver.

THE VICE-CHANCELLOR.

The petitioners in this case ask to be compensated for damages they allege they have sustained in consequence of the negligence of the defendant's employes. Their barn and its contents were destroyed by fire, and they claim that the defendant is legally answerable for the loss. The fire originated in a disaster which occurred on the defendant's

road, at Paterson, on the 7th of December, 1877, in which twenty-five cars loaded with petroleum collided with a locomotive attached to a freight train. An oil train had been cut in two, twenty-five cars being detached, and five or six left attached to the locomotive. Those detached were left standing at a point where the grade descended to their rear at the rate of thirty-five feet to the mile. Very shortly after they were detached, they commenced moving down grade, and their momentum and velocity soon became so great as to render any effort to arrest them, by the force at hand, futile. When the cars came in collision with the locomotive, some of the oil tanks were thrown from the cars to the earth with such force as to cause them to burst, and to discharge their contents. The oil, thus released, spread over the road bed, and came in contact with fire shaken from the locomotive by the collision, and was set on fire, and, thus ignited, ran down the embankment into a small brook, over which the railroad at that point is constructed, and was carried by its water to the Passaic river, and from there by the water of the river to the petitioners' building, which stood on the bank of the river, and set it on fire and destroyed it.

The evidence renders it clear, I think, that the collision was the result of negligence. When it is remembered that twenty-five loaded cars were left standing on a descending grade, in charge of a single brakeman, with brakes applied to only about one-fourth of their number, and that they commenced running away almost as soon as they were detached, and that no malicious or improper intermeddling with them is shown, there does not seem to be the least difficulty in determining what was the cause of the collision. They ran away because they were not properly secured. Their position and precipitancy show, of themselves, that they were not handled and secured with the necessary skill and care.

The case, however, presents another question. Do the facts show that there was such a break in the connection between cause and effect, that it can be declared, as a legal

conclusion, that the petitioners' damages were not the proximate as well as the natural result of the defendant's negligence, but were rather caused by an independent intervening agency, over which the defendant had no control, and for whose action or influence he cannot be held legally responsible? The usual statement of the rule upon this subject is, that damages caused by negligence, to be recoverable, must not only be its natural, but also its proximate, consequence. And " proximate," as used in this proposition, means closeness of causal connection, and not nearness in time or distance, and is intended to qualify the generality of the idea expressed by the word " natural." *Del. Lack. & West. R. R. Co.* v. *Salmon, 10 Vr. 308.* Damages arising from this cause, to be the basis of legal redress, must not only be the natural sequence of the wrongful act or omission, but must flow directly from it, in obedience to some well-understood and recognized material force. *Whart. on Neg.* § *97.*

There can be no doubt, I think, if, in this instance, the flames of the burning oil had been carried by the wind directly from the point of collision to the petitioners' building, and it had been thus set on fire and destroyed, that the injury would, in judgment of law, have been the natural and direct or proximate result of the collision. So, too, if the burning oil had descended from the point where it was first ignited, by the mere force of its own gravity, upon the petitioners' building, and destroyed it, the connection between cause and effect would have been so close and direct that the defendant's liability could not have been successfully questioned. So, also, if the fire had been carried from the place of its origin to the petitioners' building by a train of combustible matter deposited in its track by the operation of the laws of nature, the petitioners' injury, I think it could not have been doubted, would have been esteemed the direct result of the defendant's negligence. It was distinctly ruled in *Del. Lack. & West. R. R. Co.* v. *Salmon, ubi supra,* that where a fire originates from carelessness, and is carried from the point of its origin to the place

where the damage is done, by combustible matter furnished by nature, such matter does not break the chain of causation so as to relieve the defendant from liability, but is to be regarded as one of its constituent links. And it was also adjudged that in cases where a fire, negligently kindled, is not immediately communicated to the property destroyed —as, for example, where it is communicated from one building to another until it reaches the plaintiff's building— causal connection only ceases when, between the negligence and the damage, an object is interposed which would have prevented the damage, if due care had been taken. The example given by the author of this rule, in illustration, is this: A house is negligently permitted to take fire; another house, some distance off, being built negligently of material easily ignited, catches fire from the first, and then communicates the fire to a third, which, if properly built and guarded, would not have thus caught. The person whose negligence started the fire, is not liable to the owner of the third house, because his injury is due, in part, to an intervening cause combined with his own negligence. *Whart. on Neg.* § *149.*

These principles must rule this case. Their application is obvious. For, although water is almost universally used as a means to extinguish fire, and it seems, at first blush, to be absurd to say that it can be used for the purpose of extending it, yet it is true, as a matter of fact, that as an agency for the transmission of burning oil, it is just as certain and effectual in its operations as the wind in carrying flame or a spark, or combustible matter in spreading a fire. In keeping up the continuity between cause and effect, it may be just as certain and effectual in its operation as any other material force. In this instance, it carried the consequences of the defendant's negligence to the petitioners' property, with almost as much certainty and directness as if the burning oil had descended upon it in obedience to the law of gravitation.

---

---

This view is in conflict with that pronounced by the supreme court of Pennsylvania in *Hoag v. Lake Shore and Michigan Southern R. R. Co., 85 Pa. St. 293,* a case which, in its facts, is substantially the counterpart of the one in hand. The water of a running stream was there held to be an intervening agency sufficiently independent and powerful to constitute a new force, without which the injury might not have happened; and it was, therefore, held that it caused a sufficient break in the chain of causation to relieve the defendant from liability. The capacity and adaptability of a running stream as an agency for the transmission of burning oil, and its similitude to other material forces as a means of communicating this species of fire, does not seem to have been considered by the court, at least no allusion is made to it. The case is not, however, entitled to the respect due to an independent adjudication, where the court, untrammeled by previous utterances, simply endeavors to ascertain what rule will best promote justice and conform to enlightened reason and sound policy. The judgment is, in fact, a mere affirmation of principles previously promulgated in *Ryan* v. *N. Y. Central R. R. Co., 35 N. Y. 210,* and subsequently followed in *Pennsylvania R. R. Co.* v. *Kerr, 62 Pa. St. 353.* These cases were recently strongly disapproved by the court of errors and appeals of this state, as standing opposed to both precedent and principle. *Del. Lack. & West. R. R. Co.* v. *Salmon, ubi supra.*

The rule established by the case just mentioned, I understand to be this: That where a fire originates in the negligence of a defendant, and is carried directly by a material force, whether it be the wind, the law of gravitation, combustible matter existing in a state of nature, or other means, to the plaintiff's property and destroys it, and it appears that no object intervened between the point where the fire started and the injury, which would have prevented the injury, if due care had been taken, the defendant is legally answerable for the loss. Under this rule, the defendant is liable for the petitioners' loss.

There is no difficulty in measuring the damages in this case. All the evidence, in relation to them, came from the mouth of one of the petitioners. His statements seemed to be exceptionally frank and fair. I have no doubt of the correctness of his estimates. According to them, the property destroyed was worth $427.60. That sum, with interest, will be awarded.