The plaintiff's right to the benefits then depend upon the question whether upon February 1, 1905, he was able to earn a livelihood in an employment suitable to his capacity as it then was. The medical examiner determined that he was, the superintendent approved of the determination, and, if the plaintiff was dissatisfied with that determination, he had the right to appeal to the advisory committee. In his application for membership he expressly agreed "to be especially bound by regulation No. 65, providing for final and conclusive settlements of all disputes by reference to the superintendent of the relief department and an appeal from his decision to the advisory committee." After having brought the appeal to the advisory committee, he waived its benefits. The fact that later he entered the employ of the company at $40 per month shows that he was not entirely disabled, and that a calling suitable to his capacity was offered to and accepted by him, and was afterwards rejected without reasonable cause. The evidence discloses no fact tending to show that the plaintiff was disabled from earning a livelihood, except the fact that he was a one-armed man. The burden at least rested upon him to show that the decision of the medical examiner approved by the superintendent was not justified.

So far we have not considered the amendment to the by-laws made after the plaintiff became a member of the association, for the reason that the amendment does not substantially change the plaintiff's rights. In the original by-law the advisory committee was to determine as to the continuance of benefit. Under the amended by-law the medical examiner was to make such determination, with a right to appeal to the superintendent and the advisory committee. These were matters as to the internal management of the fund or association of which the plaintiff was a member, and by his application for membership he agreed to be bound by the regulations of the fund as it then existed and by any other regulations thereafter adopted, and the regulations of the fund also provides that he is especially bound by proper amendments and by-laws. The amendments were reasonable, and violated no rights of the plaintiff. Wright v. Knights of Maccabees (decided at the November term of this court) 106 N. Y. Supp. 1150. As stated before, the record is without evidence that the plaintiff is unable to earn a livelihood in an employment suited to his capacity, and therefore he has failed to establish a cause of action.

The judgment should therefore be reversed upon the law and the facts, and a new trial granted, with costs to the appellant to abide the event. All concur; COCHRANE, J., in result, on the ground that plaintiff should have exhausted his remedy within the organization before resorting to the courts.

---

### McDONOUGH v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Third Department. January 8, 1908.)

RAILROADS—FIRES—PROXIMATE CAUSE—SPREAD OF FIRE.

Where fire started by a locomotive spread until after two or three days, when it was supposed to be entirely extinguished, and five days after starting, during a high wind, was discovered burning and spread, taking

a course substantially parallel to the railroad track for a distance of about one-half or three-quarters of a mile, and was, on the following day, carried by the wind across the river and continued its course for about three-quarters of a mile, and there burned some wood and ties, the premises across the river are not the next adjoining premises to the property where the fire originated, and the loss of such wood and ties was a remote and not a proximate consequence of the starting of the fire, and hence no recovery could be had.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 1690–1693.]

Appeal from Trial Term, Franklin County.

Action by John McDonough against the New York Central & Hudson River Railroad Company for loss due to a fire. Judgment for defendant, and plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Kellas & Genaway (J. P. Kellas, of counsel), for appellant.
M. E. McClary, for respondent.

JOHN M. KELLOGG, J. Defendant's railroad extends diagonally in a southwesterly direction across township 22, which is divided into about 142 lots, each lot containing about 160 acres. The premises in question are forest lands. In an exceedingly dry time, and on the 23d of April, 1903, shortly after one of the defendant's engines had passed over its track, fire was discovered on lot 122 and along the right of way adjoining, burning in the dry stumps and underbrush thereon. An effort was immediately made by the defendant and others to extinguish the fire. It spread, but finally, after two or three days, was supposed to be entirely extinguished. Thereafter, on the 28th day of April, during a high wind from the west, the fire was discovered burning, and it rapidly spread to the Racquette river, taking a course substantially parallel to the defendant's track, for a distance of about half or three-quarters of a mile. It was then carried by the wind across the river on the 29th day of April. From the place where the fire left the west shore of the river to where it struck upon the easterly shore on the easterly side of the line of fire was 1,200 feet, and on the westerly side was not less than 700 feet. It continued its course easterly for about three-quarters of a mile, and there burned some wood and ties belonging to the plaintiff, situated upon lands of the International Paper Company, the standing timber of which he had purchased. The lands upon which the fire burned, aside from the defendant's right of way, belonged to the International Paper Company, or were lands in which that company had a half interest. The fire during its continuance and up to the time it burned the plaintiff's property passed over or upon part of lots Nos. 122, 121, 128, 130, 138, 89, 87, 86, and 85, upon which last lot we assume the plaintiff's loss was suffered.

The trial justice granted the nonsuit on the authority of Hoffman v. King, 160 N. Y. 618, 55 N. E. 401, 46 L. R. A. 672, 73 Am. St. Rep. 715, holding that the defendant's negligence was not the proximate cause of the plaintiff's injury, and that the damages were too remote. The appellant insists that all of the injury was suffered upon

the premises next adjoining that upon which the fire originated, and that, therefore, his case is distinguished from the Hoffman Case. It is probable that, in order to find the defendant liable, it must be assumed that its negligence consisted in permitting dry stumps and material to remain within its right of way, which in a dry time was liable to burn and communicate fire to the adjoining premises. The Hoffman Case applies the rule governing improved or village property to forest lands. Judge Haight, in the Hoffman Case, refers to the opinion of Folger, J., in the Webb Case, 49 N. Y. 420, 10 Am. Rep. 389, and cites with approval his statement of the rule that the liability of a person extends to his immediate neighbor only for the damages caused to him by the spread of the fire upon his next adjacent or contiguous property. In the Webb Case Judge Folger says (page 426 of 49 N. Y. [10 Am. Rep. 389]):

"We have the common-law principle well established and thoroughly recognized, and still existing to this extent, that he who negligently sets or negligently manages a fire on his own property is liable to his immediate neighbor for the damage caused to him by the spread of the fire on to his neighbor's next adjoining property. It is a principle too firmly fixed, and certainly in cases like the present too reasonable and salutary, to be shaken for light considerations."

It is not necessary to discuss whether each lot as platted upon the map consists of separate premises within the meaning of this discussion, for it is evident that the first six lots west of the Racquette river should within the rule be considered as separate premises from the lots east of that river. Neither is it necessary to consider whether the plaintiff is not a separate owner from the paper company, or whether that part of the lands owned by the paper company and another did not represent still another ownership, and thus make one or more neighbors between the plaintiff and the defendant. Too much refinement is frequently indulged in in these cases by assuming that the liability exists or does not exist on account of the presence or absence of certain lot lines or certain different ownerships. The real question is not where are the lot lines or who is the owner of the particular properties, but is the negligent act of the defendant the proximate cause of the plaintiff's loss. Is there an intervening cause which is the real cause of the injury? The safe rule is the one stated by Folger, J., before mentioned, that an injury to a neighbor's premises is too remote unless it is upon the next adjacent or contiguous property. In the case of forest lands it may be a little difficult to say that certain trees or parts of a distinct lot is the next adjacent or contiguous premises and other trees and other parts of the same lot are not. But here at least it is safe to say that the premises west of the river are the next adjacent premises, and the premises east of the river are not the next adjacent premises to the property where the fire originated. Fire is communicated to A.'s house from negligent fire upon railroad company lands, and the burning of A.'s house causes the destruction of B.'s house adjoining. Within the Hoffman Case the railroad company is liable to A., but not to B. for the reason that the destruction of B.'s house was caused by the burning of A.'s house as a cause and not by the railroad company's original negligent fire. Would the sit-

uation be different if just before the fire A. had bought B.'s house, and would the defendant be liable in that case for the destruction of both houses? Such a distinction seems to make the title deeds of A., and not the progress of the fire the criterion of liability. If a row of independent houses are burned, the liability of the person starting the fire is the same whether one person or many own the houses burned. The question is in each case: What was the origin of the fire for which recovery is·sought? Was it caused by the fire on the defendant's land, or was it caused by a separate and distinct cause existing between the defendant's negligent fire and the property destroyed?

The Ryan Case, 35 N. Y. 210, 91 Am. Dec. 49, has been commented upon and explained by later cases, but has never been overruled. When rightly understood it is consistent with the established rule in these fire cases. There the defective engine of the defendant permitted sparks to fall upon its woodshed. The sparks from the burning woodshed communicated with the plaintiff's house 130 feet distant, but it was held the plaintiff could not recover, as the defendant's negligence was not the proximate cause of the loss. There the only negligent act of the defendant was permitting sparks to escape from its engine. The construction, location, and management of the woodshed was without fault. The proximate cause of the destruction of the woodshed was the defective engine. The proximate cause of the destruction of the plaintiff's house was the burning of the woodshed. An independent cause existed between the negligent act of the defendant and the loss of the plaintiff. If the defendant had been negligent in permitting sparks to escape from the engine, and also negligent in the construction and management of its woodshed, so that the burning of the shed was the result, not only of the negligent sparks, but also of the continuing negligence of the defendant with reference to the woodshed, then the burning of the plaintiff's house would result from the combined negligent acts taking place upon the defendant's premises. In the Webb Case the negligence of the defendant consisted, not only in a defective engine which allowed coals to drop down, but also in the negligent accumulation of dry grass and weeds leading directly from the track to the plaintiff's property. It not only negligently started the fire upon its own land, but negligently communicated it to the fence and carried it upon the plaintiff's property. The Ryan Case, the Webb Case, and the Hoffman Case recognize the rule limiting liability to the immediate neighbor for the damages to the neighbor's next adjoining property. They concede that this rule is arbitrary, but reason that it rests upon sound public policy, as otherwise there would be no safety in owning or caring for property. Under all the facts of this case, the defendant's negligence was not the proximate cause of the plaintiff's loss.

The judgment should therefore be affirmed, with costs. All concur.