ALFRED WEBB, Respondent, *v.* THE ROME, WATERTOWN AND OGDENSBURGH RAILROAD COMPANY, Appellant.

He who by his negligence or misconduct creates or suffers a fire upon his own premises, which, burning his own property, spreads thence to the immediately adjacent premises and destroys the property of another, is liable to the latter for the damages sustained by him.

A fire arising from negligence is not a fire " accidentally begun," within the meaning of the act of Anne (6 Anne, chap. 31, § 67), as amended by the act of George III (14 George III, chap. 78, § 76), providing for exemption of liability for fires accidentally begun.

At a time of continued and extreme drouth, while a strong wind was blowing from the land of the defendant toward the adjoining woodland of the plaintiff, coals were negligently dropped from one of defendant's engines, which set fire to a tie; the fire was communicated to an accumulation of weeds and grass and rubbish which defendant had suffered to gather by the side of its track; thence it spread to the fence and on to plaintiff's woodland, burning and destroying his growing forest trees, etc.

In an action for the damages,—*Held*, that the questions as to whether defendant was negligent in the use of its property, and as to whether the injury was a probable consequence of the negligent acts and omissions, were properly submitted to the jury, and that the evidence was sufficient to sustain a verdict for plaintiff. Also, *held*, that the question of negligence did not consist merely in suffering the coals to drop from the engine; but that that, together with the dryness of the atmosphere and earth, the strength and direction of the wind, the permitted accumulation of weeds, grass and rubbish, were all constituents of the act, and went together to make it negligent. (The cases of *Ryan* v. *N. Y. C. R. R. Co.*, 35 N. Y., 210, and *Penn. R. R. Co.* v. *Kerr*, 62 Penn., 353, distinguished and explained.)

Upon the issue of negligence in dropping the coals,—*Held*, that testimony as to the presence of coals on the track at the time of the fire, at the place of the fire, at other times not remote therefrom, and from time to time immediately after the passage of the engine which dropped the coals occasioning the injury, was pertinent and proper.

When there is a long series of uniform decisions, asserting the same principle and reaching the same conclusion upon like facts, the fact that a point involved therein has not been in all cases raised by counsel or started by the court, is strong support to the conclusion that the point has no foundation.

(Submitted May 3, 1872 ; decided May 21, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 3 Lans., 453.)

The action was brought to recover damages for injuries to plaintiff's woodland, alleged to have been occasioned by defendant's negligence.

Plaintiff was the owner of a farm in the town of Ellisburgh, Jefferson county, upon which was about six acres of woodland, adjoining defendant's road.

On the 27th of August, 1867, in a time of extreme drouth, one of the defendant's locomotives in passing along its road, opposite this wood lot, dropped live coals upon the track The evidence tended to show that the occasion of this was the defective construction of the apparatus upon the engine for retaining the coal, which permitted the coal to escape. These live coals set fire to a tie on the track, from thence the fire was communicated to an old tie at the side of the track and

from thence to an accumulation of weeds and grass which had been cut down by the side of the track and permitted to lay there, and to other rubbish on defendant's land, all of which in consequence of the drouth had become exceedingly dry and combustible. By this the fire was conducted to the fence, and thence upon plaintiff's land, burning the trees and soil, and doing the damage complained of. At the time the coals were dropped, the wind was blowing strongly toward plaintiff's wood lot.

Upon the trial the court allowed evidence on behalf of plaintiff, under objection, that defendant's engine for a month or two before the fire had dropped quantities of live coal in the locality of the fire; that there were live coals upon the track at other places at the time of the fire; and that coal at other times had dropped from the engine in question.

Defendant's counsel moved for a nonsuit upon the ground that no negligence on the part of defendant had been shown, and that the damages were too remote, which motion was denied. The jury found a verdict for plaintiff for $715. The case is reported below in 3 Lansing, 453.

*Edmund B. Wynne* for the appellant. Plaintiff's loss was not the direct and immediate result of defendant's act, and the latter is not liable. (Bacon's Max., Reg. 1, vol. 3, p. 223; *Ryan* v. *N. Y. C. R. R. Co.*, 35 N. Y., 210; *Penn. R. R. Co.* v. *Kerr*, 62 Penn., 353.) Points which pass *sub silentio* are not to be regarded as adjudged. (*People* v. *Corning*, 2 Com., 15; *Freeland* v. *McCulloch*, 1 Duer, 414; *Johnston* v. *Kniffin*, 2 J., 36.) The fire was accidental, within 6 Anne, chap. 31, § 67, as amended 14 George III, chap. 781, § 76. That is a part of the common law and excuses defendant from liability. (*Lansing* v. *Stone*, 37 Barb., 17; 1 Black Com., 431.)

*James F. Starbuck* for the respondent. Where running in a place of peculiar exposure to fire, extra diligence is required of a railroad. (*Fero* v. *B. and S. L. R. R. Co.*, 22 N. Y.,

209; *Phillips* v. *R. W. and O. R. R. Co.*, Gen. Term, fourth department.) The evidence to the dropping of coals was proper. (*Sheldon* v. *H. R. R. Co.*, 14 N. Y., 218; *Hinds* v. *Barton*, 25 N. Y., 544; *Field* v. *N. Y. C. R. R. Co.*, 32 N. Y., 339.) The evidence of negligence was sufficient to go to the jury and their finding is conclusive. (*Rood* v. *N. Y. and Erie R. R. Co.*, 18 Barb., 80; *Fero* v. *B. and S. L. R. R. Co.*, 22 N. Y., 209; *Sheldon* v. *H. R. R. R. Co.*, 14 id., 218; *Hinds* v. *Barton et al.*, 26 id., 644; *Field* v. *N. Y. C. R. R. Co.*, 32 id., 339.) Where one carelessly kindles a fire upon his own premises, which necessarily communicates to and burns another's property, he is liable. (18 Barb., 80; 3 Kent's Com., 436, note *a*; 4 id., 18, 83; *Fielter* v. *Phippard*, 63 Eng. C. L. R., 346; 11 Ad. & Ellis [N. S.], 347; *Clarke* v. *Foote*, 8 J. R., 421; 3 Kent's Com., 436, note *a*; 4 id., 81, 83; *Barnard* v. *Poor*, 21 Pick., 378; *Hart* v. *W. R. Co.*, 13 Metc., 99; *Piggott* v. *E. C. R. Co.*, 54 Eng. Com. L. R., 228; *Cook* v. *C. T. Co.*, 1 Den., 91; *Vaughn* v. *Menlove*, 32 Eng. Com. L. R., 208; 3 Bingham N. C., 468; *Simons* v. *Monier*, 29 Barb., 421; *Field* v. *N. Y. C. R. R. Co.*, 32 N. Y., 339.) The statute 6 Anne and 14 George III were never in force in the colony of New York and did not become part of our common law. (1 Black. Com., 101; 1 Jones & Ves. Stats., chap. 35, 281.) If retained, they do not extend to fires occasioned by negligence. (63 Eng. Com. L. R., 346, 347; *Vaughn* v. *Taff Vale Railway*, 3 Hurlstone & Norman's Rep., 742.)

FOLGER, J. I think that the question whether the defendant was negligent in kindling the fire, was properly left to the jury to decide. It is true that employees of the defendant who were called as witnesses, did testify with more or less positiveness and particularity, that the engines of the defendant, and the one engine especially complained of, were fitted with all the best appliances in known practical use for the prevention of the escape of fire; and that the engines and this engine and these appliances were in good order at the time of the fire. On cross-examination however, most if not all

of these witnesses made statements tending to show that there was something in the construction or mode of attaching some of these appliances, which left a chance for the escape of coals of a size which was dangerous. And most if not all of them did concede; that if coals were found of the size, and in the quantity, and with the frequency, and at the places spoken of by other witnesses, it must have been that the engines and this engine of the defendants were not in good order in the apparatus and appliances provided to prevent the escape of fire. These other witnesses were as positive and as particular as were the witnesses for the defendant. It was for the jury to decide where they would put their belief; and to find that the engines were not well provided with the requisite preventive apparatus, or that being so provided it had been suffered to get into bad order, or that they were well provided with sufficient and proper apparatus, well cared for, and in complete order.

The verdict shows that the jury found that the defendant was negligent, either in the lack of provision of proper and sufficient apparatus, or in not well caring for it after it was attached to the engine.

And upon the issue which arose on this question, the testimony as to the presence of coals on the track, at the time of the fire, or at the place of the fire at other time not long therefrom, or at once after the passage of this engine from time to time, was pertinent and proper.

The verdict of the jury rendered upon testimony proper, competent and sufficient, has established that this state of facts existed. At a time of continued and extreme drouth, while a strong wind was blowing from the land of the defendant toward the wood-land of the plaintiff, a fire was negligently kindled by the defendant on its land, which was self-fed with dry and combustible matter, accumulated there in more than ordinary quantity by the direct act and sufferance of the defendant. This fire, fanned and driven by this wind, spread through this matter to the fences of the defendant, and burned them, and on to the wood-land of the plaintiff lying immedi-

ately contiguous to land of the defendant, and there burning and injuring his growing forest trees, did him damage.

The defendant contends that on this state of facts, as a mat ter of law, it is not liable to the plaintiff.   This contention is put upon the single ground that the damage suffered by the plaintiff is too remote.

In my judgment, this position of defendant cannot be maintained.

It certainly is not a novel proposition, that he who by his negligence or misadventure creates or suffers a fire upon his own premises, which burning his property spreads thence on to the immediately adjacent premises of another, and there destroys the property of the latter, is liable to him in an action for the damage which he has suffered.

(See *Beaulieu* v. *Finglam*, cited by DENIO, J., in *Althorf* v. *Wolfe*, 22 N. Y., 355–366, from the Year Books; *Snagg's Case*, reported as anonymous, Cro. Eliz., 10, pl. 5; *Tuberville* v. *Stamp*, 1 Salk., 13; *Pantam* v. *Isham*, id., 19; *Clark* v. *Foot*, 8 J. R., 421.)   Nor is it one which though once held, has in later days been questioned and discarded.   (*Filliter* v. *Phippard* 11 Add & Ell. [N. S.], *347; 63 E. C. L. R., 346; *Barnard* v. *Poor*, 21 Pick., 378; *Field* v. *N. Y. C. R. R. Co.*, 32 N. Y., 339; *Smith* v. *L. & S. W. R. W. Co.*, Law Rep., 5 Com. Pleas, 98.)

" This rule, it was said, was founded on the general custom of the realm; in other words, it was a peculiarity of the common law " (*Viscount Canterbury* v. *Att'y-Gen'l*, 1 Phillips, 306), and has its support in the maxim " every man must use his own so as not to hurt another " (1 Salk., 13, *supra*), and it was applied not only to the case of a fire arising in a house, but to that of one arising on the open land; and not only where the fire was intentionally set and carelessly managed, but where negligently kindled.

At first it was held that the defendant was liable though guiltless of negligence, and that he could defend himself only by showing that the fire was excited by some superior cause which he could not resist nor control.   And so firmly

fixed was this rule in the common law, that there must needs be a statute to soften its rigor. (6 Anne, chap. 31, § 67, and 14 Geo. III, chap. 78, § 76.)

We have the common-law principle well established and thoroughly recognized and still existing to this extent: that he who negligently sets or negligently manages a fire in his own property, is liable to his immediate neighbor for the damage caused to him by the spread of the fire on to his neighbor's next adjacent property.

It is a principle too firmly fixed, and certainly in cases like the present too reasonable and salutary, to be shaken for light considerations.

It is said that in the cases cited above, the point now made by the defendant was not raised; that it passed *sub silentio.* And citations are made to show that points which pass *sub silentio* are not to be regarded as having been adjudged. It is however, equally as true, that where there has been a long series of uniform decisions, asserting the same principle, and reaching the same conclusion upon facts which are alike, where a point now lately made was as much involved, the fact that the point has not been in any of all these cases raised by counsel or stated by the court, is strong support that it is now made without ground. In each of two cases hereafter noticed, much relied upon by the defendant, Littleton's rule is cited with approval from 1 Vernon, 385; "what never was, never ought to be." (See also *Vose* v. *L. & Y. A. W. Co.,* 2 H. & N., 728, 734.)

Again: It is urged that the statute of Anne, as amended by that of the third George above cited, is a part of the common law of this State; and that thereby it is provided that "no action, suit or process whatever shall be had against any person in whose house, chamber, stable, barn or other building, or on whose estate, any fire shall * * * *accidentally* begin, nor shall any recompense be made by such person for any damage thereby, any law, usage or custom to the contrary notwithstanding."

It is not needed that it be determined whether the claim

that these statutes are a part of the common law of this State is well founded. It is sufficient to say of them, that they apply only in a case in which the fire did "*accidentally* begin"; and that it has been held, on grave consideration, that a fire arising from negligence is not one which does accidentally begin, and that the statutes referred to afford no defence to one who negligently sets or manages his fire. (*Filliter* v. *Phippard, supra.*) It is also urged that the decision in *Ryan* v. *N. Y. C. R. R. Co.* (35 N. Y. 210), followed and approved in *Penn. R. R. Co.* v. *Kerr* (62 Penn. St., 353) has announced a rule which conflicts with the cases herein above cited. I do not understand it to be so, or that the decisions in 35 N. Y. and 62 Penn. St., *supra,* put forth a new rule of law, or one which has not been acted upon and recognized *pari passu,* with the recognition and growth of the principles upon which most of the cases above cited are based. In *Ryan's Case,* the opinion of the court was that the action could not be sustained, for the reason that the damage incurred by the plaintiff was not the immediate but the remote result of the negligence of the defendant. It certainly was not a new rule that the damages resulting from an act may be too remote for the actor to be liable therefor. The court defined remote damages to be, those which are not an ordinary and natural, not an expected, not a necessary and usual result of the negligent act; and still further, as those which depend upon a concurrence of accidental and varying circumstances, over which the negligent party has no control. This was not a modern definition. The facts in the *Ryan Case* are familiar, but they can be repeated briefly. The defendant by its negligence in not keeping in sufficient good order its engine, or in not properly managing it, set fire to its own wood-shed and the contents thereof. The fire from this was communicated through an intervening vacant space of one hundred and thirty feet, to the building of the plaintiff standing on his premises, which were not in contiguity with those of the defendant, and it was destroyed. And the pith of the decision is, that this was a result which was not necessarily to

be anticipated from the fact of the firing of the wood-shed and
its contents; that it was not an ordinary, natural and usual
result from such a cause; but one dependent upon the degree
of heat, the state of the atmosphere, the condition and mate-
rials of the adjoining structures and the direction of the wind,
which are said to be circumstances accidental and varying.
The principle applied was the converse of that enforced in
*Vandenburgh* v. *Truax* (4 Denio, 464), which was that the
consequence complained of was the natural and direct result
of the act of the defendant. This principle is said in the
*Ryan Case* not to be inconsistent with that which controlled
the disposition of the latter case, and to be unquestionably
sound, but be applied according to sound judgment in each
case as it arises.

The case from the Pennsylvania Reports is the same in its
material facts, the same in the principle on which it is put,
and in the process of reasoning by which that principle is
applied to the facts.

I am of the opinion, that in the disposition of the case
before us, we are not to be controlled by the authority of the case
in 35 N. Y. more than we are by that of the long line of cases
which preceded it, and which have been herein cited and
adverted to. It announces no new principle. It recognizes
the principle which it adopts as one before that established,
and applying it to the facts therein existing, holds that the
damage sued for was not the necessary and natural result of
the negligent act. A different state of facts brought into the
focus of the same principle, would give a different conclusion.
It is proper, however, to say, that it is not necessary in this
case to differ from or to question the reasoning in that case,
which fortifies the conclusion there reached, by a considera-
tion of the relations of men to each other in populous villages
and cities, and the disastrous consequences to follow from
holding one liable for his own or his servant's negligence by
which a fire is kindled in his house which spreads to the pro-
perty of one or more neighbors.

Let us look at the facts and circumstances in the case before

us. It is argued that the negligent act of the defendant here was only the suffering of coals to drop from its engine. It cannot be so circumscribed. The negligence consisted not merely in that. It was an act of negligence made up of all the facts and circumstances in which the coals were let fall. The insufficient or deranged condition of the preventive apparatus of the engine, the continued and extreme dryness of the atmosphere, and of the earth and its herbage, and of all matter that was upon the earth at that place; the blowing of the wind with the strength it did, and in the direction it did; the accumulation of weeds, grass and rubbish by the side of the defendant's track, between it and the plaintiff's land; were all constituents of the act of the defendant, and went together to make it negligent. It would not be negligent to throw aside a lighted match upon the margin of a stream, or into grass that is lush. It would be negligent to fast hold it in one's hand unlighted, in a powder-mill. " Now the definition of negligence," says WILLES, J., " is the absence of care according to the circumstances." ( *Vaughan* v. *Taff Vale Railway Co.*, 5 H. and N., 679–687.) And this meets the further position taken in the argument, that as the negligent act of the defendant was the dropping of the coals, it cannot be said that this was the cause of the burning of the plaintiff's woods; for the coals, it is said, set fire only to the tie within the track of the defendant, and thus it was not the live coal from off the engine which fired the plaintiff's timber. The coal fired the tie; fire or heat from that touched the old tie lying beside and extending at a right angle from the track; fire from that ignited the dry herbage, the gathered weeds and grass, and the rubbish down the side of the bank; fire from that caught in the fence of defendant; and that burning communicated with material on the plaintiff's land; and so not by the first cause, but by the last cause, so many removes from the first, which was the negligent act, was his property consumed. Such is the reasoning used to show that this damage is too remote from the defendant's negligent act, for a liability therefor to be incurred thereby. Here too, the act of

negligence is limited to the dropping of the coal; and so limited it is plausible to call the results which followed consequential steps, each farther removed from the prime act of negligence, and hence the last too remote therefrom to be a necessary and expected result.

But if in a time of extreme drouth and high wind, there be laid or suffered to gather a train of readily combustible matter up to the bounds of another's property; it is not to be denied but that it is an act of negligence to drop fire at the hither end of that train; nor but that it is an ordinary, a usual, a necessary result, reasonably to be expected, that the fire will run from particle to particle through it, and catch in whatever will burn which is adjacent at the thither end.

Such was substantially the state of matters in the case before us. And the learned judge, Thompson, Ch. J., who delivered the opinion in *Kerr's Case* (in 62 Penn. St.), foresaw the possibility of such a case; "there might possibly be cases," he says, "in which the causes of disaster, although seemingly removed from the original cause, are still incapable of separation from it, and the rule suggested might be inapplicable." And in *Vaughan* v. *Taff Railway Co.* (*supra*), Cockburn, Ch. J., says, that if the jury had found that the fire was cast by the defendant upon the herbage and other combustible matter upon the bank of the railway, which caught fire therefrom, and thence extended to the plaintiff's wood, the defendant would be liable. In *Smith* v. *L. & S. W. Railway Co.* (*supra*), counsel for the plaintiff in argument claimed that the negligence of the defendant in leaving the trimmings of the hedges on the sides of the line for fourteen days in unusually dry weather, was the immediate cause of the damage to the plaintiff. The counsel for the defendant, on the other hand, insisted that there was a combination of circumstances for which the defendant was not responsible, and that the result was what no reasonable person could have anticipated. Bovill, Ch. J., in giving his opinion as one of the majority of the court, thinks "it impossible to say that there was not evidence from which a jury might be justified

in concluding that there was negligence as regards the plaintiff, and that the destruction  *  *  *  *  was the natural consequence of their (the defendants') negligence." (And see *Scott* v. *Hunter,* 46 Penn. St., 192; *McGraw* v. *Stone,* 53 id., 441.)

The question in the case in hand arises upon a motion made by the defendant to nonsuit the plaintiff, which was denied and exception taken, and upon an exception to a refusal by the court to charge the jury that if the fire originated by the negligence of the defendant in permitting coals to drop from its engines and kindling a fire upon its own premises, from which it spread and burned the timber of the plaintiff in an adjacent lot, the defendant was not responsible.

I am of the opinion that there was evidence to be submitted to the jury, whether the defendant was not negligent in the use of its property, and whether the injury complained of was not a probable consequence of the negligent acts and omissions of the defendant.

The defendant asks in effect that this court hold that it is not liable for the damage to the plaintiff, unless it appears that the coals which escaped from the engine were cast from the engine directly upon the property of the plaintiff which was injured. If the air had been the medium through which was conveyed the same fire which left the engine, it seems to be conceded that the damage was the immediate and natural result of the negligence. I am unable to perceive a reasonable distinction between the air as the medium of conveying the fire, and the denser matter which had accumulated upon the ground there. Nor am I able to confine the act of negligence to the dropping of the coal from the engine, and thus separating it from all the other concurring acts and omissions of the defendant, make that the solitary prime cause of a series of causes. If this were so, it might as well be said that of a hundred growing trees burned by a fire kindled among them by a cinder thrown from a locomotive, the sufferer could recover for only the one upon which the cinder fell, and that

as the others took fire from the flame of that, it was not the negligent act which caused their destruction.

I am, therefore, of the opinion that there was no error committed at the trial, and that the judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.