JOHN A. REIPER, RESPONDENT, *v.* WILLIAM H. NICHOLS AND CHARLES H. NICHOLS, APPELLANTS.

*Negligence — carelessness in starting a fire — a person is only liable for the immediate and proximate effects of his acts.*

On May 29, 1882, sparks and burning cinders escaped, through the defendant's negligence, from the top of a smoke-stack in the defendant's factory and set fire to the roof of an old unoccupied building situated about 280 feet in a southeasterly direction from, and on the same side of the street with, the smoke-stack. Owing to the lack of proper appliances and to the fact that the doors of the building were locked, the roof of the building could not be reached until the fire had spread across the street to an old barn some 110 feet long and some fifty feet distant; from this barn it again passed across the street to a saloon and other buildings, and from these to a building owned by the plaintiff which stood near the smoke-stack from which the sparks were emitted.

In an action by the plaintiff to recover the damages occasioned by the loss of his building:

*Held,* that the defendant's negligence was not the immediate and proximate cause of the burning of the plaintiff's building, and that he was not liable for the damages occasioned thereby.

*Ryan* v. *New York Central Railroad* (35 N. Y., 210) followed.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new

trial made upon the minutes of the justice before whom the action was tried.

*W. H. Johnson,* for the respondent.

*H. & W. J. Welsh,* for the appellants.

POTTER, J. :

This is an appeal from a judgment, entered upon the verdict of a jury and from an order denying a motion upon the minutes for a new trial. The facts in this case make it one of unusual occurrence and of more than ordinary interest. They are substantially as follows : The defendants are engaged in the manufacture of hubs in a building situated on the northerly side of a street in the village of Hancock, in Delaware county ; the machinery of the factory is run by an engine from the steam of a boiler, with a smoke-stack, some seventy feet high, which were in immediate connection with the factory building. The fuel of the fire producing the steam consists mainly of the chips and the shavings from turning the hubs. On the 29th day of May, 1882, the steam was up and the machinery in operation. When this was the case it was not an uncommon occurrence for sparks to escape from the smoke-stack. At about five o'clock upon the afternoon of this day, the soot in the smoke-stack took fire and an unusual amount of sparks and burning cinders proceeded from the top of the stack and fell down at various points. The wind was blowing strongly from the north-west.

The attention of the defendants and of several citizens was called to the danger of the situation, and some of them remonstrated with the defendants for allowing the sparks and cinders to escape in such a manner and advised the defendants to shut off the draft to prevent it. The defendants declined to do so as it was near the time for shutting off the steam and stopping the machinery for the day.

At or near this time an old unoccupied building, situated in a general south-easterly direction from the smoke-stack and about two hundred and eighty-two feet distant therefrom, was seen to be on fire. The fire when first seen was in the roof or in some boards between the roof and the upper third floor of the building. There were no means at hand to get upon the roof of the building, and the place of fire could not be reached and no near approach to it could

be immediately effected through the inside of the building owing to the doors being fastened and other obstructions. The fire spread from this building to another near by and from the latter to a barn upon the opposite side of the street and some fifty feet distant, and from the barn, which was an old building one hundred and ten feet long, the fire passed across the street again, to the side on which stood the first building fired, to a saloon and other buildings and to the plaintiff's shop, the subject of this action, thus crossing the line taken by the spark which, escaping from the smoke-stack, fired the first building beyond — assuming, as found by the jury, that a spark from the defendants' smoke-pipe set the first fire — and returning to the plaintiff's, which stands a little to the west of the hub shop whence the original sparks proceeded.

At the close of the plaintiff's case, and again at the close of the whole case, the defendant moved for a nonsuit upon the ground that the loss sustained by the plaintiff was not the direct result of the negligence of the plaintiff, assuming that the defendants had been guilty of negligence. The same questions were raised upon the requests to charge. Exceptions were properly taken to these refusals to nonsuit and to charge, so that there is presented for decision in the first instance this question, whether a person through whose negligence fire is communicated to and consumes a building, and the building thus fired in process of burning sets on fire the building of another nearer the place where the fire originated, or the place of emitting the spark, and the latter building in burning sets on fire the building of another nearer still to the place of the original source and practically alongside of it, is liable to the owner for the loss by fire of the last named building.

The learned justice in trying the case under consideration refused to nonsuit upon this state of facts, and left or designed to leave the question to the jury whether or not the negligence of the defendants, if the jury should find the defendants guilty of negligence, was the *natural and proximate* cause of burning plaintiff's building. It is contended that this ruling, leaving the determination of this question, under the circumstances of this case, to the jury, was error; that the court should have disposed of the question as one of law and granted the nonsuit. The cases mainly relied upon by the defendant in support of this contention are *Ryan* v. *The New York Central Rail-*

*road* (35 N. Y., 210); *Pennsylvania Railroad* v. *Kerr* (62 Penn., 353; S. C., 1 Am. R., 431), and *Hoag* v. *Lake Shore, etc., Railroad Company* (85 Penn., 293; S. C., 27 Am. R. 653.) These cases recognize and apply the principle which is involved in this class of cases, viz.: Whether the cause and effect are natural and proximate.

In the case of *Ryan* v. *New York Central* (*supra*), the court assumed upon a given state of facts to decide whether the cause was natural and proximate, and there does not seem from the report of the case to have been any objection taken that the case should have been given to the jury. In the case of *Ryan* v. *New York Central Railroad* (*supra*) the facts were that the defendant by the careless use of its locomotive had set fire to its own woodshed, which communicated fire by heat and sparks to the plaintiff's house in the city of Syracuse, one hundred and thirty feet from the woodshed. The court held the cause too remote from the consequence and nonsuited the plaintiff.

In the case of *Pennyslvania Railroad* v. *Kerr*, the defendant, through a defective locomotive or carelessness, had fired its own warehouse, which, in burning, set fire to the plaintiff's hotel, thirty-nine feet distant from the warehouse, for which plaintiff brought an action and recovered a verdict, but the court set aside the verdict for the reason that the cause was not proximate to the effect.

In the case of *Hoag* v. *Lake Shore Railroad* (*supra*) the facts were, that owing to a sudden rain a portion of an embankment was detached and slid down upon the track. An oil train of defendant's coming along a few minutes after the slide was thrown from the track by this detached earth upon the track, and the oil cars thrown off and the oil spilled and set on fire, and thus running down into a creek below swollen by the rain, was carried by the current several hundred feet to the buildings of plaintiff which were thereby set on fire and consumed. Upon that state of facts the court decided as a matter of law that the cause was too remote from its consequence and refused to sumbit the question to the jury. While it is true that actions for negligence from their nature and character involving, as they necessarily must, the proof and consideration of many acts of the parties and circumstances of the situation to determine the negligence of both plaintiff and defendant; of the defendant as a cause of action and its connection with consequences, and of plaintiff as a defense or answer to defendants' negligence, are largely questions of fact for

a jury to pass upon; yet upon a clear, undisputed or conceded state of facts it becomes the right and duty of the court to dispose of actions of negligence in the same manner as the court should dispose of any other class of actions.

In the examination of the numerous cases in the courts of several States of the Union, England and the court of the United States, a marked difference in the rulings is found to exist. All of them agree in this, that whether the effect is the natural and proximate sequence of a cause is to be determined by a jury, but the States of New York and Pennsylvania hold that a jury should not be allowed to find that a cause is proximate beyond the first effect; that is, where the building which is fired as a first effect, itself fires the second, and the second the third building, and so on to an indefinite extent.

The decision of the courts in all the other States, so far as I have been able to examine their reports of cases, hold that the question of natural and proximate cause and effect is not only to be left to the jury to determine, but that the liability extends just as far as the cause can be traced in effects which follow the prime cause without some intervening agency, either active or passive, changing, diverting, modifying or affecting in some degree the operation of the prime cause. (*Delaware, Lack. and W. R. R.* v. *Salmon,* 10 Vroom. [N. J.], 299; S. C., 23 Am. R., 214; *Fent* v. *Toledo and W. R. R.,* 59 Ill., 349; S. C., 14 Am. R., 13; *Hart* v. *Western Ry.,* 13 Metc., 99; *Cleaveland* v. *Grand Trunk Ry.,* 42 Vt., 449; *Kellogg* v. *The Chic. and N. W. Ry. Co.,* 26 Wis., 223; S. C., 7 Am. R., 69; *Milwaukee and St. Paul R. R.* v. *Kellogg* 4, Otto, 469; *Sneesy'* v. *Lan. and Y. R. R.,* L. R., 9 Q. B., 263.)

These cases hold that a person guilty of negligence is to be held responsible for all the consequences flowing naturally and proximately from the negligent cause, and that diversity of ownership of the buildings burnt, or the lands traversed by the fire, or mere distance of locality, or the period of time between the burning of the buildings, do not necessarily or at all relieve from liability until the primal cause ceases to operate, or the chain of natural and proximate cause and effect have been interfered with by some agency, or neglect or fault of some other person either by his conduct or the condition of his property.

The case under consideration was tried and submitted to the jury upon this theory of the law of defendant's liability. Tested by the case of *Ryan* v. *New York Central Railroad* (*supra*), this mode was erroneous. The plaintiff should have been nonsuited according to the authority of that case. I do not find that that case has been overruled. It was the subject of notice and comment by Judge FOLGER in *Webb* v. *Rome, Watertown and Ogdensburgh Railroad* (49 N. Y. 420).

He sought to distinguish the latter case from the Ryan case, thus indirectly approving the decision in the latter case. He sustained the verdict in the Webb case upon the ground that the defendant in that case was guilty of negligence in the use and condition of its locomotive in dropping fire upon its own track which set fire to a tie upon the railroad, thence to an old tie lying by the side of the rail, and that set fire to dry and combustible matter which the defendant had allowed to accumulate along its track and thence to defendant's fence and to plaintiff's wood lot, which the report of the case shows lay *immediately adjacent* to the defendant's premises, which were all together in a dangerous condition, and were regarded by the court as constituting the cause of action. The two cases do not impinge upon each other, or they were not so regarded by the Court of Appeals. Hence I must conclude that the case under consideration, tested by the standard set up by the case of Ryan, required that the plaintiff should have been nonsuited. But if this case, as presented to the jury, was not in conflict with the Ryan case, I think the learned justice was in error in carrying out the theory upon which the case was tried by him. The case was tried upon the theory that the cause might be natural and proximate, though the first fire originated by the emission of a spark 208 feet away, and then the first building set fire to a second building which was fifty or more feet away, and upon the opposite side of the street, and that to another nearer the origin of the fire, and thence passing across the street, about sixty feet, to the plaintiff's building, near the place at or where the fire originated. If one were to follow with a pencil the line of the spark from the smoke-stack to the first building burned, to the plaintiff's building, he will describe very nearly a figure "8."

Now, two results follow from this and each of them fatal to

plaintiff's recovery. There must have been an intervening cause, such as a change in the direction of the wind, in sparks falling in the first instance upon a building, or in a subsequent course back to plaintiff's building upon one or more buildings easily ignitable or surrounded by matter that was readily set on fire, and this communicated to the buildings burned.

The learned judge who tried the case submitted the change of wind as one instance of an intervening cause which would render the spark not the proximate cause of the burning of the successive buildings. In many of the cases above referred to and the text-writers, and it is substantially laid down in Wharton on Negligence (§ 150), that where one of the intermediate buildings has been negligently built of materials easily ignited, or is surrounded by matter easily set on fire by sparks and heat from burning buildings, or where the ordinary means of putting out fire are not obtainable, or there are obstacles in the way of applying water or the ordinary means of extinguishing or preventing the spread of the fire, in such cases and under those conditions the causal connection ceases and the original cause is no longer the proximate cause. Wharton further says : That a person whose negligence may have been one of the antecedents or conditions of an event, is relieved judicially from liability if such negligence is applied to the particular event by the intervening negligence or malice of a third party.

I think this a sensible and just rule, and I am inclined to think that it would devolve upon the plaintiff to show, to sustain his cause of action, where he would hold the defendant liable beyond the first building burned in the series, that the negligent cause continued as the natural and proximate cause of the burning of the buildings for which he sought a recovery. It seems that this proof is essential, that the original cause continued to be the natural and proximate cause of the burning of which plaintiff complains. This is but applying the same rule of proof to the owner of the second or third building burned, as is applicable to the owner of the first building.

I think the plaintiff failed to make this essential proof; on the contrary I think the proof quite clear, if not uncontradicted, that the first building burned was an old and combustible building ; that

it was unoccupied partially, if not wholly; there was no ladder or other means of applying water to the place where it was first seen upon the roof, and when it was but a foot or two in extent, and by reason of the doors being fastened, and the internal structure and condition of the house, the fire was practically unapproachable. The condition of the barn to which the fire passed the first time it crossed the street, was little if any better. There was no public means provided for extinguishing the fire, and there was a lamentable lack of private means or a failure to use them. Now the defendants are not responsible for this neglectful condition of things. Here was manifestly the intervening neglect of other parties except for which the fire might have been suppressed or stayed. Now another result must follow here: The rule we have been considering is as often called the rule of experience and observation, and parties guilty of negligence are held to the rule that they must answer for all damages which men of ordinary intelligence and prudence may reasonably anticipate. It is the rule of probabilities as to the consequences which may ensue from an act of negligence.

This is but another mode of stating the rule of natural and proximate cause and consequence. Now if the defendants are liable because as men of ordinary prudence they would have foreseen the burning of each building in succession, one taking fire from the other, in the order of cause and effect, why was not the plaintiff guilty of contributory negligence in not removing his goods from the expected cause of the fire? He was upon the ground and saw, as well as the defendants, one building set fire and burn another in the series. If the defendants are liable because they, as prudent men, must have known that the buildings, one after another, including the plaintiff's, would probably burn, the plaintiff must be held to know and expect just what the defendants are held to know and expect.

Now it was charged by the judge in this case, and is held in several of the cases hereinbefore referred to, that if the plaintiff unnecessarily neglects to remove his goods from the danger of the fire, he is guilty of contributory negligence and cannot recover. But we are inclined to think that if the case had been tried upon the theory which was not in conflict with, at least, the authorities of this State, the judge fell into an error by which the jury got a

wrong impression, and it must have had a large influence in producing their verdict.

Now as we have seen there are and perhaps were, in this case, one or more intervening causes that broke the causal chain. The judge properly charged them in reference to one intervening cause, viz., a change in the direction of the wind. The judge was requested to charge that if the jury find that the fire did escape through the defendant's carelessness, and then passed in a south-easterly direction to the Read building, and was then caused to take a westerly direction forty feet to the old structure or barn called the Read hotel barn, and the combustible material in and about it, and by this was communicated to the plaintiff's building, then this is an independent cause intervening between the wrong and the injury, and the plaintiff cannot recover. This request contains in pretty apt words, one of the intervening causes that break the causal chain.

The court refused to charge this proposition, and declined to charge differently from what he had charged. Now he had not charged in reference to an intervening cause of this character at all. But he charged that intervening buildings which are successively burned, were not intervening causes, and then asks " if there was any *other* or *different* fire from that, that the defendants, by their negligence, originated ? *That is the question.*" Then he proceeds to illustrate his idea by supposing that some intervening building had been blown up to stay the course of the fire, and the fire thus created had burned the plaintiff's building, the defendants would not have been liable. Then he stated *that* would have been an intervening cause, and he asks if there was anything of that kind that intervened between the fire emitted from the defendant's smoke-stack and the defendant's burning building ?

I have but little doubt that the jury were led to believe from the charge, as given by the court, that another independent fire only, or perhaps the same fire, with a change of wind, were the only intervening causes that there were or could possibly be in this case to prevent the liability of these defendants. As we have before seen, there doubtless were, or at least might have been, other intervening causes besides wind and another fire, and the jury should have had their attention called to the possible existence of other intervening causes.

I think a new trial should be granted for those errors in the charge. Some questions were made in regard to the admissibility of evidence. If we are right in any of the views we have taken, a new trial must be granted, and it is not worth while to consider those minor questions.

LEARNED, P. J., and BOARDMAN, J., concurred, on the authority of *Ryan* v. *New York Central Railroad Company* (35 N. Y., 210).

Judgment and order reversed, new trial granted, costs to abide event.